**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IWOI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 07-CV-3453 |
| | ) | |
| MONACO COACH CORP., ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Monaco Coach Corporation and its two unincorporated divisions, Beaver Motor Coaches and Roadmaster Chassis (collectively referred to as "Monaco"), move to dismiss [51] Counts I, II, IV, V, and VI of Plaintiff's second amended complaint for failure to state a claim under Rule 12(b)(6). Defendant Barrington Motor Sales and Services, Inc. ("BMS") moves to dismiss [54] Counts III, IV, V, and VI of Plaintiff's second amended complaint for failure to state a claim. For the following reasons, the Court grants in part and denies in part Monaco's motion to dismiss [51] and denies BMS's motion to dismiss [54].

**I.    Background**[1]

On June 21, 2006, Plaintiff IWOI, LLC – a Montana limited liability company formed by Robert Woischke – purchased a new 2006 Beaver Monterey motor home (built on a Roadmaster chassis) from Defendant BMS for $222,500.00. According to Plaintiff, it purchased the motor home (or "RV") from BMS for cash and intended to use it for recreational purposes. Monaco manufactured the motor home at its plant in Oregon and shipped it to BMS's lot in Illinois.

---

[1] The following facts are taken from Plaintiff's second amended complaint. For present purposes, the Court accepts the allegations in the complaint as true, as precedent instructs. See, *e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). The Court at this juncture takes no position on whether any of the allegations are, in fact, well founded.

Plaintiff alleges that the RV left Monaco's facility and arrived at BMS in a severely defective condition and that immediately upon the RV's delivery, these various defects became apparent and have not been satisfactorily repaired despite numerous service attempts.

According to Plaintiff, at the time Defendants sold Plaintiff the RV, Defendants knew and actively concealed that the vehicle contained material manufacturing defects, including a twisted frame, which caused the vehicle to vibrate even at a low speed and lean heavily to its right side, resulting in the need for constant steering correction. Plaintiff alleges that Defendants knew that the material defects could not be repaired and that the repair warranty provided to Plaintiff could never be honored. According to the complaint, since the pre-existing material defects could never be repaired, both the vehicle's safety and its value have been substantially diminished, reducing the value of the recreational vehicle to less than half the sales price.

On June 22, 2006, after possessing the RV for one day, Woischke returned the RV to BMS for repair. BMS delivered the RV to an authorized Monaco repair facility in Indiana. On July 18, 2006, BMS notified Woischke that the RV's rear wheels had been realigned and that the RV was ready for pick-up. Woischke retrieved the RV the next day, but on July 20, he notified BMS that the repairs were unacceptable. On August 16, BMS once again delivered the RV to a Monaco repair facility in Indiana. On September 6, Woischke drove to the plant to test drive the RV and determined that the RV exhibited the same problems that it exhibited prior to August 16. On September 9, Plaintiff informed Monaco in writing that the RV had not been repaired to his satisfaction. Monaco again attempted to remedy the problems, and on October 20, BMS delivered the RV to Plaintiff.

On October 27, 2006, Woischke sent Roger Morgan (Monaco's Customer Service Coordinator Supervisor, with whom Woischke previously had been in communication) another

letter detailing Woischke's view of the RV's defects and his dissatisfaction with the multiple attempts to repair the RV. On December 22, Woischke sent Monaco a notice of revocation of acceptance. On March 1, 2007, Woischke allowed representatives from Monaco and Beaver to inspect the RV at Plaintiff's storage facility. According to Plaintiff, the defects in the RV remain uncorrected, rendering it unusable. Plaintiff alleges that Defendants have refused or are unable to repair or compensate Plaintiff for the RV's defects and have refused to refund Plaintiff's purchase money in exchange for return of the RV.

Plaintiff alleges that BMS is an authorized Monaco dealer and franchisee and acted as Monaco's authorized agent in connection with the sale of the RV. According to Plaintiff, a franchise agreement exists between BMS and Monaco, giving Monaco control over BMS with respect to various aspects of its business.

At the time of purchase, Plaintiff was given various warranties. In relevant part, the Beaver and Roadmaster warranties state:

> Warrantor's Limited Warranty covers defects in the manufacture of your motorhome and defects in the materials used to manufacture your motorhome. "Defect" means the failure of the motorhome and/or the materials used to assemble the motorhome to conform to Warrantor's design and manufacturing specifications and tolerances.
>
> Warrantor will repair and/or replace, at its option, any covered defect if: (1) you notify Warrantor or one of its authorized servicing dealers of the defect within the warranty coverage period and within (5) days of discovering the defect; and (2) you deliver your Motorhome to Warrantor or Warrantor's authorized servicing dealer at your cost and expense * * *.
>
> * * * If either three or more unsuccessful repair attempts have been made to correct any covered defect that you believe substantially impairs the value, use or safety of your motorhome, have taken 30 or more days to complete, you must, to the extent permitted by law, notify Warrantor directly in writing of the failure to successfully repair the defect(s) so that Warrantor can become directly involved in exercising a final repair attempt for the purpose of performing a successful repair to the identified defect(s).

DE 50 at 21. On June 21, 2006, Woischke also executed an "Acknowledgement of Receipt of Motorized Warranty/Product Information" which stated:

> I have completed the above inspection of this recreational vehicle and have taken the test drive at the time of purchase. I noted: _____. I received and read a copy of the Monaco Coach Corporation Limited Warranty and the Chassis Limited Warranty before I purchased the vehicle * * * I also understand that the selling dealer is not an agent for Monaco Coach Corporation but is an independent company with no authority to make any representation or promise for Monaco Coach Corporation. I acknowledge that the chassis, component parts and appliances that are separately covered by another manufacturer's warranty are excluded from the Monaco Coach Corporation Limited Warranty * * *.

DE 50, Ex. B3. IWOI did not note any problems or concerns on the Warranty Acknowledgment. *Id*.

IWOI purchased the RV under an Illinois Standard Buyers Order, which was signed by Woischke. Immediately above his signature is the following provision:

> PURCHASER AGREES THAT THIS ORDER INCLUDES ALL OF THE TERMS AND CONDITIONS ON BOTH THE FRONT AND BACK SIDE HEREOF AND THAT THIS CONTRACT CANCELS AND SUPERCEDES ANY PRIOR AGREEMENT INCLUDING ORAL AGREEMENTS.

DE 50, Ex. A. The face of the Buyers Order contains the following disclaimer:

> <u>DISCLAIMER OF IMPLIED WARRANTY</u>: Unless prohibited by law * * * the vehicle is sold "AS IS" and (dealer) hereby expressly disclaims all warranties, either express or implied, including any IMPLIED WARRANTY OF MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.

DE 50, Ex. A.

Plaintiff IWOI's second amended complaint asserts Magnuson-Moss Warranty Act claims against Monaco for breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), Conversion (Count V), and "Action to Recover the Price Pursuant to 810 ILCS 5/2-711(1) (Count VI) and an Illinois Consumer Fraud Act claim alleging concealment and breach of promise (Count IV). The second amended complaint also asserts Magnuson-Moss

4

Warranty Act claims against BMS for Conversion (Count V) and to "Recover the Price Pursuant to 810 ILCS 5/2-711(1)" (Count VI), an Illinois Consumer Fraud Act claim alleging concealment and breach of promise (Count IV), and a "Revocation of Acceptance" claim under Section 2-608 of the Illinois Commercial Code (Count III).

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Rule 9(b) of the Federal Rules of Civil Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see also

*Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 947 (N.D. Ill. 2006) (citing *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993)). In other words, the complaint must allege the "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Plaintiff's Illinois Consumer Fraud Act claim alleging concealment and breach of promise (Count IV) will be viewed pursuant to this standard.

### III. Plaintiff's Claims Against Monaco Coach Corporation

#### A. Magnuson-Moss Warranty Act Claims Against Monaco

Monaco argues that IWOI is not a consumer entitled to recover under the Magnuson-Moss Warranty Act ("MMWA"). Monaco also argues that IWOI is not in privity with Monaco and thus it has no implied warranty claim. Finally, Monaco argues that IWOI had no right to revocation, so there can be no conversion or action to recover the purchase price.

##### 1. IWOI's status as a consumer

Monaco's first argument is that IWOI is not a consumer entitled to recover under the MMWA. Only a "consumer" may recover under the MMWA. See 15 U.S.C. § 2310(d)(1).[2] The term "consumer" means "a buyer (other than for purposes of resale) of any consumer product * * *." 15 U.S.C. § 2301(3). Monaco argues that IWOI did not purchase the motor home for "'recreational purposes,' as it claims." Rather, Monaco contends that IWOI bought the RV to resell, even though the second amended complaint contains no such allegation. This

---

[2] The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written [or] implied warranty may bring suit for damages and other legal and equitable relief * * *."

6

argument has no merit. At the motion to dismiss stage, the Court must accept Plaintiff's allegations as true, and Plaintiff has stated that it purchased the RV for recreational purposes. For purposes of the present motions,[3] Plaintiff has demonstrated that it is a consumer under the MMWA. As this is the only argument that Monaco makes with respect to Plaintiff's claim against Monaco for breach of express warranty (Count I), the Court denies Monaco's motion to dismiss Count I.

2. *Implied Warranties*

In Count II of its second amended complaint, Plaintiff brings a claim of breach of the implied warranty of merchantability. See 15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law"). In claims brought under the MMWA, state law governs the creation of implied warranties. See *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). The Act does not create implied warranties, but instead confers federal court jurisdiction for state law breach of implied warranty claims. See *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998); see also *Schimmer v. Jaguar Cars*, 384 F.3d 402, 405 (7th Cir. 2004) (MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.").

Monaco argues that IWOI's implied warranty claim (Count II) should be dismissed because its sales contract was with BMS, not Monaco, and therefore there was no privity of contract. See *Voelker,* 353 F.3d at 525 (under Illinois law, privity of contract required to recover economic damages for breach of implied warranty). Plaintiff counters that because Illinois courts permit non-privity consumers to bring implied warranty claims against manufacturers under the MMWA, federal courts must follow. See *Rothe v. Maloney Cadillac, Inc.,* 119 Ill. 2d

---

[3] BMS adopts the same argument in its motion to dismiss Plaintiff's MMWA claims, and the Court's reasoning applies equally to BMS's position that IWOI was not a consumer under the MMWA.

288, 293-95 (1988) (under MMWA, non-privity consumer with written warranty may bring implied warranty claim); *Szajna v. General Motors Corp.,* 115 Ill. 2d 294, 311-13 (1986) (MMWA broadens reach of UCC implied warranties). While federal courts are obligated to follow the Supreme Court of Illinois' interpretation of Illinois law regarding privity, federal courts are not required to follow the Illinois courts' interpretation of the MMWA, which is a federal statute enacted by Congress. See *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997) ("federal courts are under no obligation to defer to state court interpretations of *federal* law") (emphasis in original). The Seventh Circuit has made clear that Sections 2308 and 2304(a) of the MMWA "do not modify, or discuss in any way, a state's ability to establish a privity requirement," thus breach of implied warranty claims hinge on state law, namely, Illinois' adoption of UCC Article 2 requiring privity of contract. See *Voelker,* 353 F.3d at 525; see also *Rothe,* 119 Ill. 2d at 294 (under the UCC, implied warranty of merchantability arises only between buyer and immediate seller). In short, the *Voelker* court did not adopt the Illinois court's interpretation that the MMWA broadened the UCC's requirements by allowing for non-privity parties to bring implied warranty claims, and Plaintiff fails to persuade the Court why it should conclude otherwise. Indeed, other courts in this district have already rejected that precise argument. See *Snyder v. Komfort Corp.*, 2008 WL 2952300, at *5-6 (N.D. Ill. July 30, 2008); *Zaro v. Maserati N. Am., Inc.*, 2007 WL 4335431, at *3-4 (N.D. Ill. Dec. 6, 2007); *Horton v. Winnebago, Inc.*, 2005 WL 1500926, at *2 (N.D. Ill. June 13, 2005); *Kowalke v. Bernard Chevrolet, Inc.*, 2000 WL 656660, at *5 (N.D. Ill. Mar. 23, 2000); *Larry J. Soldinger Assocs., Ltd. v. Aston Martin Lagonda of N.A., Inc.*, 1999 WL 756174, at *6-10 (N.D. Ill. Sept. 13, 1999). Because Plaintiff lacks privity of contract with Monaco, its implied warranty claim fails. See *Voelker,* 353 F.3d at 525.

Plaintiff attempts to skirt the privity requirement by alleging that BMS is an agent of Monaco due to the "great control" Monaco exerts over BMS. Pl. Resp. at 13. However, Plaintiff has not cited any Illinois law that accepts such a contention.[4] In fact, in Illinois, bare allegations of an agency relationship between the manufacturer and dealer are insufficient. See, *e.g.*, *Bushendorf v. Freightliner Corp.,* 13 F.3d 1024, 1026 (7th Cir. 1993). In *Zaro v. Maserati N. Am., Inc.*, the court observed that there is "no Illinois case law supporting the proposition that a general agency principle creates privity between a purchaser and a non-selling manufacturer. Moreover, 'an automobile dealer or other similar type of dealer, who * * * merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent.'" *Zaro*, 2007 WL 4335431, at *4 (quoting *Bushendorf,* 13 F.3d at 1026). Plaintiff's effort to create such a rule of privity is merely an effort to "constitute an end around the privity requirement" established in *Szajna* and *Rothe*. See *Kutzle v. Thor Indus., Inc.,* 2003 WL 21654260, at *6 (N.D. Ill. July 14, 2003) (rejecting the same argument that an agency theory provides for privity under Illinois law).

Based on the foregoing, Plaintiff has failed to present sufficient evidence creating a genuine issue of material fact that Monaco was in privity of contract with IWOI, especially in light of IWOI's admission that "[o]n or about April 29, 2006, Plaintiff entered into an agreement to purchase the 2006 Beaver Monterey 36 * * * from Barrington RV for $222,500.00." Accordingly, Plaintiff's breach of implied warranty claim as to Monaco fails. See also *Snyder v. Komfort Corp.*, 2008 WL 2952300, at *5-6 (N.D. Ill. July 30, 2008).

---

[4] Plaintiff sought leave of court to file additional authority on the issue of privity; however, the two Ohio cases, one decided in 1974 and the other in 1983, which found privity between a buyer and a manufacturer of goods, are contrary to Illinois law. The Court is not persuaded to depart from the law of this circuit.

### 3. *Conversion and Action to Recover Purchase Price Claims*

In response to Monaco's motion to dismiss Plaintiff's claims for conversion (Count V) and action to recover purchase price (Count VI), Plaintiff withdrew its conversion claim against Monaco and did not address Monaco's arguments seeking dismissal of the claim for action to recover the purchase price. See Pl. Resp. at 14. Since Plaintiff has withdrawn its conversion claim against Monaco, the Court moves directly to the claim for action to recover the purchase price, although given Plaintiff's silence on that claim, the Court surmises that Plaintiff may have intended to withdraw it as well.

Plaintiff seeks to recover the price of the R.V. pursuant to 810 ILCS 5/2-711, which states that "[w]here the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid * * *." In order to succeed on such a claim, Plaintiff must allege that Monaco was the seller of the R.V. at issue. "Seller" means a person who sells or contracts to sell goods. 810 ILCS 5/2-103(d)(1). As set forth earlier, Monaco did not contract to sell the R.V. to Plaintiff. Rather, BMS sold the R.V. to Plaintiff. Plaintiff paid BMS for the R.V. and only BMS gave consideration to and received consideration from Plaintiff. Section 5/2-711 identifies the remedies available to an aggrieved buyer against its seller. Plaintiff and Monaco do not stand in a buyer-seller relationship. Accordingly, Plaintiff cannot cancel the contract or revoke acceptance as to Monaco (see *Mydlach v. Daimler-Chrysler Corp.*, 226 Ill. 2d 307, 331-32 (2007); *Kutzle,* 2003 WL 21654260, at *6) and cannot seek to recover the price pursuant to 810 ILCS 5/2-711. Therefore, Plaintiff fails to state a claim under that section, and the Court

dismisses Counts VI (action to recover purchase price) and V (conversion) of the second amended complaint.

### B. Illinois Consumer Fraud Act Claim Against Monaco

In Count IV of its second amended complaint, Plaintiff alleges that Monaco violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, which prohibits

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, * * * in the conduct of any trade or commerce * * *.

815 ILCS 505/2. The elements of a claim under the Illinois Consumer Fraud Act are (1) the defendant engaged in a deceptive act or practice, (2) with the intent that the plaintiff rely on the deception, (3) in the course of trade or commerce, and that (4) the deception was the proximate cause of the claimant's alleged injury. See, *e.g.*, *ABN AMRO, Inc. v. Capital Intern. Ltd.*, 2008 WL 4286984, at *34 (N.D. Ill. September 16, 2008); *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 731 (N.D. Ill. 2005) (citing *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F.Supp.2d 986, 994 (N.D. Ill. 2002)). A complaint alleging a violation of the Illinois Consumer Fraud Act must be pleaded with the same particularity and specificity under Rule 9(b) as that required for common law fraud. See, *e.g.*, *Costa*, 390 F. Supp. 2d at 731 (collecting cases). Specifically, a plaintiff must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated. See, *e.g.*, *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990); *DiLeo*, 901 F.3d at 627.

Illinois courts have held that "an omission or concealment of a material fact in the

conduct of trade or commerce" by a manufacturer can constitute consumer fraud. *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 799 (1st Dist. 2006). However, it is not necessary to plead either a common law duty to disclose (*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996)) or actual reliance (see *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 421 (1st Dist. 1998)) to state a valid claim based on an omission or concealment under the Consumer Fraud Act. Concealment is actionable where it is employed as a device to mislead. *Connick,* 174 Ill. 2d at 505. Also, "the seller's knowledge or ignorance about the falsity of its representations is irrelevant." See *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001).

In *Lipinski v. Martin J. Kelly Oldsmobile, Inc.,* 325 Ill. App. 3d 1139 (1st Dist. 2001), a case relied upon by Plaintiff, the plaintiff alleged that his car was defective because it had an excess risk of oil migration into the PVC system, resulting in excessive oil consumption and severe damage to the engine from insufficient oil. Plaintiff alleged that the engine in his car failed as a result of the defect. Plaintiff further alleged that defendants knew of the car's "tendency for excessive oil consumption" no later than January 30, 1997, when GM issued a technical bulletin to its dealers, yet they failed to disclose the defect. *Id*. at 1145-46. The defendants thus allegedly knew of the defect when they sold the car to the plaintiff in April 1997, and Plaintiff said he would not have purchased the car had he known of the tendency. Plaintiff claimed damages for the cost of replacing the engine and for the diminution in the value of the car. *Id*. The court held that such allegations were sufficient to state a claim under the Act. *Id*. at 1146.

Plaintiff contends that Monaco committed consumer fraud (1) [by] "actively conceal[ing] the many material and obvious defects in the RV, including the twisted frame, at the time of purchase and delivery thus inducing Plaintiff to accept delivery, sign the purchase order and

warranty acceptance form, and pay the remainder of the purchase price"; and (2) because "Monaco knew that it could not honor its repair warranty at the time of final purchase and delivery because the RV's hidden defects, including the frame damage, could never be properly corrected." Pl. Resp. at 3. In its second amended complaint, Plaintiff alleges that on June 20, 2006, Monaco and BMS committed an unfair or deceptive practice under the Illinois Consumer Fraud Act when Sean Bransky of BMS, BMS, and Monaco "[k]nowingly sold a motorhome that was in disrepair and unsafe driving condition as 'brand new.'" DE 50 at 19. Plaintiff alleges that Monaco and BMS "knew, at the time of sale, that the Motor Vehicle was materially defective and could not be repaired and that the repair warranty was useless and could never be honored. Monaco also is alleged to have known that it would never be able to honor the repair warranty and that it intended to break that agreement at the time of sale. Nonetheless, Monaco and [BMS] concealed from Plaintiff, at the time of sale that the Motor Vehicle * * * was knowingly in disrepair."[5] DE 50 at 19-20. Plaintiff further alleges that it suffered "actual economic damages" in that it paid for a new RV but received an irreparably damaged RV that was not safe to operate.

Relying on the Illinois court's decision in *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2nd Dist. 2000), Monaco also argues that Plaintiff's claim at best is one for breach of contract or warranty rather than a claim for fraud. See also *Avery v. State Farm Mutual Automobile Insurance Co.,* 216 Ill. 2d 100 (2005). Monaco correctly notes that "breach of a contractual promise, without more, is not actionable under the Consumer Fraud Act." *Pappas*, 363 Ill. App. 3d at 800 (citing *Avery*, 216 Ill. 2d at 169).

---

[5] Plaintiff makes additional allegations on pages 21 through 23 of the second amended complaint but those allegations merely restate the allegations already set forth, specifically, that Defendants knew, yet concealed from Plaintiff, that the RV was materially defective and could not be repaired and that the repair warranty could never be honored.

13

If Plaintiff had rested on its allegations that Monaco "never intended to live up to the promises of [its] warranties" or even that Monaco was fraudulent in "[p]romising time and time again to repair the Motor Vehicle when [it] knew repair was not possible" or that Monaco "knew it would never be able to honor the repair warranty" (DE 50 at 19-23), then Monaco's argument – that Plaintiff's allegations amount to nothing more than garden variety breach of warranty allegations – would be persuasive. See *DeLeon v. Beneficial Const. Co.*, 55 F. Supp. 2d 819, 826-27 (N.D. Ill. 1999); *Petri v. Gatlin*, 997 F. Supp. 956, 967-68 (N.D. Ill. 1997) (mere allegations that defendant entered into contracts that it had no intention of fulfilling renders ICFA claim suspect because ICFA claim must state more than action for common law breach of contract); *Avery*, 216 Ill. 2d at 169 (a "deceptive act or practice" requires "more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.") (internal quotations omitted); see also *Lantz v. American Honda Motor Co., Inc.*, 2007 WL 1424614, at *10 (N.D. Ill. May 14, 2007).

However, Plaintiff here pleads the following specific facts, which, taken as true at least for present purposes, suggest deceptive acts by Monaco and BMS. First, Plaintiff alleges that Monaco knew, but failed to disclose, that the RV had numerous material defects, including a twisted frame, which could not be repaired. Plaintiff specifically alleges that the person who drove the RV from Oregon to Illinois reported a "bump steer" problem to BMS. DE 50 at 6. Plaintiff further alleges that BMS took the RV to Champion Frame-Align to address the bump steer problem and that George Reich of Champion Frame-Align informed BMS that it could not repair the problem. Plaintiff also alleges that either Monaco or BMS placed a shim on the right side of the front axle in an effort to conceal the twisted frame.

14

The Court views Plaintiff's allegations as somewhat unclear with respect to "who knew what when" – specifically, who the cross-country driver worked for and, if the driver did not work for Monaco, how Monaco was made aware of the bump steer problem. Another unknown is who ordered that the shim be placed on the axel. However, the Court acknowledges that this might be information to be uncovered during discovery. Despite the specificity requirement set forth in Rule 9(b), "the federal courts remain a notice pleading system, where 'suit should not be dismissed so long as it is possible to hypothesize facts, consistent with the complaint, that would make out a claim for relief.'" *DeLeon*, 55 F. Supp. 2d at 825 (N.D. Ill. 1999) (quoting *Petri,* 997 F. Supp. at 967). Plaintiff's allegations – which accuse both Monaco and BMS of not disclosing the twisted frame and then trying to conceal it by placing a shim on the axel – identify at least some facts indicating, or from which one could infer, specific acts that Monaco or BMS undertook, or information that was concealed, with the intent to mislead Plaintiff. Cf. *id*. at 826 ("It is simply not enough for plaintiffs to allege that the defendants obtained applications for financing in a fraudulent 'manner,' without specifying at least some facts indicating, or from which one could infer, some specific act which defendants undertook with the intent that plaintiffs be misled.").

Additionally, although Monaco did not deal directly with Plaintiff, manufacturers can be liable under the Illinois Consumer Fraud Act when they knowingly place a materially defective product into the stream of commerce whether or not they are in privity of contract with or communicate directly to the end consumer. See *Pappas v. Pella Corp.*, 363 Ill. App. 3d at 805 ("[P]laintiffs allege that Pella, even though aware of a material defect, never notified its customers that the aluminum clad wood windows were defective. In effect, plaintiffs allege they relied on Pella's concealment by silence. Requiring anything more would eviscerate the spirit

and purpose of the Consumer Fraud Act."); see also *Connick.*, 174 Ill. 2d at 505 (allowing consumer fraud claim to go forward where plaintiff alleged that Suzuki committed consumer fraud violation based on a material omission by Suzuki). Therefore, Monaco's privity argument is unpersuasive, and the Court denies Monaco's motion to dismiss as to Count IV.

## IV.   Plaintiff's Claims Against BMS

### A.   "Revocation of Acceptance" under § 2-608 of Illinois Commercial Code

Plaintiff brings a revocation of acceptance claim against BMS under Section 2-608 of the Illinois Commercial Code (Count III). BMS counters that because Plaintiff purchased the RV from BMS "AS IS" and BMS properly disclaimed all implied warranties in the Buyers Order, there can be no nonconformity that might give rise to a revocation claim.

The Seventh Circuit, citing to Illinois law, has stated that to be entitled to revoke acceptance, a plaintiff must prove that: "(1) there was a breach of an implied warranty of merchantability; (2) the defect in the product substantially impaired the product's value to him; (3) the plaintiff reasonably thought the defect could be cured; and (4) it has not been cured." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (citing *Collum v. Fred Tuch Buick*, 6 Ill. App. 3d 317, 321 (1st Dist. 1972)). Like plaintiff-appellant in *Priebe*, Plaintiff IWOI argues that notwithstanding BMS's disclaimers, IWOI may revoke its acceptance if the nonconformity of the goods substantially impairs its value to the buyer. See Pl. Resp. at 4 (citing to *Blankenship v. Northtown Ford, Inc.*, 95 Ill. App. 3d 303, 305-07 (4th Dist. 1981)). In *Priebe*, the Seventh Circuit, reviewing the district court's ruling on summary judgment, concluded that the plaintiff had failed to create a material issue of a fact as to whether the value of the car at issue was substantially impaired. *Priebe*, 240 F.3d at 588. By citing *Blankenship* and framing the issue as it did, the Seventh Circuit appears to have accepted the general proposition that "[when] the

16

evidence unequivocally demonstrated that the substantially defective nature of the vehicle clearly impaired its value to the Plaintiffs * * * *revocation of acceptance is appropriate even if the dealer has **properly** disclaimed all implied warranties*." *Blankenship*, 95 Ill. App. 3d at 306 (emphasis added).[6]

Here, at this stage of the case, there is no "evidence"; there only are allegations, which must be accepted as true. Plaintiff has alleged that the RV sold by BMS to Plaintiff does not conform to BMS's description of it in the sales contract as a "new" RV because it had a twisted frame and other hidden material defects (described in the second amended complaint) that no one could ever properly repair and that clearly impaired the RV's value. Based on those allegations, as well as the Seventh Circuit and Illinois case law cited above, the Court finds that Plaintiff has sufficiently alleged a claim for revocation of acceptance. See *Blankenship*, 95 Ill. App. 3d at 307 (holding that revocation of acceptance was a proper remedy where car leaked oil, vibrated, and repeatedly broke down and thus did not conform to its description as a new car and defects clearly impaired value of car to plaintiffs); see also 3A Anderson U.C.C. § 2-316.7 (3d ed. 2008) ("where the goods do not conform to the manner in which they are described in the contract, there may be grounds for rejection or rescission") (citing *Lytle v. Roto Lincoln Mercury & Subaru, Inc.*, 167 Ill. App. 3d 508 (2d Dist. 1988)).

### B. Conversion and Action to Recover Purchase Price Claims Against BMS

The second amended complaint also asserts Magnuson-Moss Warranty Act claims against BMS for Conversion (Count V) and "Action to Recover the Price Pursuant to 810 ILCS 5/2-711(1)" (Count VI). 810 ILCS 5/2-711 identifies the remedies available to an aggrieved

---

[6] In its reply brief, BMS attempts to distinguish *Blankenship* on the ground that the dealer in that case did *not* properly disclaim the warranty. However, as the italicized portion of the quote above makes clear, the rule established in *Blankenship* assumes that the "dealer has properly disclaimed all implied warranties" – as BMS insists is the case here as well.

buyer against a seller prior to acceptance or after a justified revocation. BMS argues that IWOI cannot claim conversion or an action to recover the purchase price pursuant to 810 ILCS 5/2-711 because Plaintiff did not reject the RV and Plaintiff is not entitled to revoke. Plaintiff does not dispute that it accepted the RV. However, as the Court determined in analyzing Plaintiff's revocation of acceptance claim (Count III), Plaintiff has sufficiently alleged a revocation claim based on its allegations of non-conformity. Since BMS's sole argument with regard to Plaintiff's conversion and action to recover purchase price claims is that Plaintiff is not entitled to revoke, and the Court has already determined that Plaintiff has properly alleged a revocation claim, the Court denies BMS's motion to dismiss Counts V and VI.

      **C.**     **Illinois Consumer Fraud Act Claim Against BMS**

In Count IV of its second amended complaint, Plaintiff alleges that BMS also violated Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2. Because BMS makes the same arguments as Monaco with respect to Plaintiff's consumer fraud claim, and because the Court's analysis applies equally to the allegations against BMS, the Court denies BMS's motion to dismiss as to Count IV.

**V.**     **Conclusion**

For the foregoing reasons, the Court denies Monaco's motion to dismiss as to Counts I and IV and grants Monaco's motion as to Counts II, V, and VI. The Court denies BMS's motion to dismiss as to all counts.

Dated: October 9, 2008                                   _____
                                                                                     Robert M. Dow, Jr.
                                                                                     United States District Judge