UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IWOI, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 07-3453 |
| v. | ) |
| | ) Magistrate Judge Susan E. Cox |
| MONACO COACH CORPORATION, | ) |
| BEAVER MOTORCOACHES, | ) District Judge Robert M. Dow, Jr. |
| BARRINGTON MOTOR SALES RV, | ) |
| d/b/a BARRINGTON MOTOR SALES | ) |
| AND SERVICE, INC., ROADMASTER | ) |
| CHASSIS, and CATERPILLAR, INC., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

This matter comes before the court on plaintiff's motion for sanctions. For the reasons set forth below, the Court grants the motion in part and denies it in part [dkt. 219].

I. **Procedural History**

This case originally was referred to the court by the district judge on September 28, 2010 for purposes of deciding certain outstanding discovery motions and for settlement. At the time the parties first appeared before the Court, fact discovery was closed, but expert discovery was ongoing. Plaintiff, IWOI, LLC, had moved to re-open and extend fact discovery in light of what it described as certain discovery irregularities in defendants' production of documents. Specifically, plaintiff demonstrated to the Court that there were certain electronic mail messages which appeared to be missing from the production. Plaintiff sought permission from the Court to search the hard drives of certain computers in defendants' possession to locate the electronic mail messages.

The Court was originally was reluctant to allow plaintiff the relief it sought. This action involves allegations of breach of warranty and violations of certain state law proscriptions against consumer fraud, in connection with the sale of a motor coach to plaintiff. The amount in controversy, however, does not exceed $250,000 unless punitive damages are awarded by a jury. But plaintiff offered to foot the bill for the search. Because the Court agreed that it appeared that certain electronic mail referred to in other messages produced by defendants was missing from the production, the Court allowed the search to proceed at plaintiff's expense.

Unfortunately, the parties had difficulty agreeing to a search term protocol despite the Court's repeated directives to meet and confer about this matter. The Court continued to extend discovery to allow this process to proceed. However, in the end, the parties could not reach agreement on either search terms or the length of the proposed search. On December 9, 2010, the Court adopted plaintiff's search terms, although noting that they appeared to be rather broad, but limited the search to four computers over two days. This ruling did not end the bickering between the parties about the search protocol and despite a court order, the search did not take place. Once again, the Court intervened to resolve the dispute between the parties and on January 27, 2011, the Court again extended discovery. The Court also ordered that the search take place on February 7 and February 8, 2011 from 8:00 AM to 5:00 PM and specified precisely how the search was to take place. The Court also outlined how the exchange of information gleaned from the search would be disseminated, preserved, and how data would be returned to defendants.

The Court then ordered that defendants submit a protective order concerning the treatment of certain confidential information, the dissemination of which defendants wished to limit. Instead, defendants raised for the first time the concern that information that was likely to be found in any

search of their computers was protected by attorney-client and/or work product privileges. Defendants, nonetheless, submitted a proposed protective order, but it was not agreed to by plaintiff. As more fully explained in the Court's opinion of February 7, 2011, defendants wished to cull out for attorney review communications between many of its own employees and consultants, as potentially privileged communications, though they did not appear to implicate any privilege whatsoever. The Court rejected that proposal and entered its own protocol and limited protective order. This order governed the subsequent search, although more delays occurred in the review and designation of relevant documents by the parties.

## II.     Results of the Forensic Examination of Defendants' Computers

The instant motion for sanctions and other relief centers on what the plaintiff found when it searched defendants' computers. Specifically, plaintiff's expert has discovered an e-mail from defendant Barrington Motor Sales' president Sean Bransky to Adam Gudger, the sales manager of defendant Monaco Coach Corporation ("Monaco Coach"). In the May 26, 2006 e-mail, Bransky describes the problems with the motor home that his dealership experienced when the motor home was driven:

> The main issue is the drivability of the coach. When it arrived, we drove it and it did not drive like any other Beaver we've driven. It was very difficult to keep the road and a tremendous amount of bump steer. Also, there was a terrible clunking when the suspension moved up and down. We sent it to the frame/suspension specialists (Champion Frame align) and they said the trailing arms hit the frame at the front brackets when the vehicle dips with the air spring set at 10.5". When they adjust the springs to 11.5," the trailing arms don't hit but the bump steer increases to the point where it is hardly driveable.
>
> We called Monaco and spoke with Taylor Spike who was very prompt and concerned about the issues. He sent out a factory chassis specialist from Indiana whose name was Randy. Randy spent a day and a half trying to figure this one out. He cured the trailing arm issue that was hitting the frame, but cannot cure the bump steer issue. There is still a large amount of clunking and banging under the coach

when it is driven but he did not know what it was. He left back to Indiana today saying coach is still bad and does not know what to do except for trying heavier shocks and air limitors from the front air bags.[1]

The relevance of this document is obvious. Defendants, in their opposition to the motion for sanctions, spend a great deal of time explaining how this e-mail does not contradict Mr. Bransky's deposition testimony. That question ultimately is not for this Court to resolve. We note, however, that in his testimony, Mr. Bransky categorically denied that his dealership knew that the motor home had a bump steer problem and stated that even if such a problem existed, it did not present a safety issue. Both of these assertions seem, at least in part, to be contradicted by this e-mail message. However, the Court expresses no further opinion on the impact of this evidence on the ultimate questions in the case, except to state that the document is clearly relevant to the issues in dispute between the parties.

### III. Plaintiff's Discovery Requests and the Parties' Positions

In its discovery requests to defendants, plaintiff asked for "[h]ard copies of all retrievable information in computer storage which relate in any way to this case, the subject RV(s), or the underlying transaction(s) between Mr. Woischke and Barrington Motor Sales or between Barrington Motor sales and other parties to this case." Both corporate defendants (dealer and manufacturer) responded "that these documents have already been produced to the extent that they are within [defendants'] control." Of course, a copy of the email in question would, at least at some time, have existed on computers located at both Barrington Motor Sales and Monaco Coach, who were represented by the same law firm. Monaco Coach has since filed for bankruptcy and any action against it is accordingly stayed.

---

[1] Pl's Mt, Exh. D., dkt. 219.

Plaintiff asserts in its motion that defendants' failure to produce this e-mail was deliberate. In support of this contention, plaintiff relies on defendants' attempt to shield from discovery, on the basis of privilege, communications between defendant Barrington Motors and Adam Gudger, who defendants claimed was a "technical specialist assigned to it working under the auspices of the company's legal department." In relief, plaintiff requests that the Court shift the entire cost ($15,069.00) of the forensic examination of the computers to defendants, and an unspecified amount of attorneys' fees and award any other relief the court deems necessary to remedy the failure to produce this e-mail.

For their part, defendants point out that although plaintiff was permitted a broad examination of four of their computers, this is the only document of significance which has resulted from the thorough search. (Plaintiff alluded in its motion that more documents of significance may result from the search, but the Court has not seen any evidence that this is the case.) Defendants further contend that the e-mail message was not "reasonably accessible" under Federal Rule of Civil Procedure 26(b)(2)(B) and, therefore, they had no obligation to produce it. In its initial brief in opposition to plaintiff's motion, defendants fault plaintiff for failing to discuss in its motion how this e-mail was discovered and for not providing an affidavit from plaintiff's expert addressing this point. In response to this argument, plaintiff, in its reply, attached an affidavit from forensic expert Daniel Stratton in which he asserts that he found this e-mail in two separate locations on Barrington Motor Sales' computer network. The e-mail was found on Sean Bransky's local hard drive in an orphaned, but not deleted, storage file and also on a network hard drive that had been manually backed up. Stratton further stated: "[a] simple word search of the Barrington Motor Sales computers would have uncovered the e-mail stored on the network server. This word search could be completed

within the native Microsoft windows search function, and could be undertaken by an individual with no advanced computer knowledge."[2]

Despite the fact that they had complained that plaintiff's original filing lacked the specific information, which plaintiff then provided in its response, defendants inexplicably argued in a motion to strike plaintiff's pleading that the court should disregard this evidence because it was raised for the first time in plaintiff's reply. The court denied that motion, but allowed defendants to file a sur-reply. Defendants argued that their failure to produce the e-mail is plaintiff's fault because it did not identify the parameters of the electronic discovery it sought as Principle 2.01 of the Seventh Circuit Electronic Discovery Pilot Program now requires. Defendants also dispute the fact that this e-mail was readily accessible to a layperson such as Sean Bransky. Mr. Bransky submitted his own affidavit where he states that he attempted to perform a word search for the e-mail in question using search terms contained within that e-mail, but was unable to access it.[3]

## IV. Are Sanctions Warranted?

Before undertaking further analysis of this dispute between the parties, the Court has a few observations to make. The first is that the docket of this case, as well as the numerous motions which have been filed in the brief time this Court has been engaged in discovery management, reveal that the parties are either unwilling or unable to communicate effectively with one another about discovery conflicts. Second, both sides have been unwilling to consider compromising on their respective litigation positions despite the mounting cost of this lawsuit. This joint intransigence is more responsible for the dispute that the Court must now resolve than any one action taken by either

---

[2] Pl's reply, Exh. B., dkt. 230.
[3] Defs' surresponse, Exh. E, dkt 238.

party.

The first issue for the Court is whether plaintiff's discovery request fairly encompassed the e-mail message, even if it existed only in electronic form. We find that it did. The plaintiff asked for hard copies of responsive documents in electronic storage. Defendants apparently interpreted this request to mean only those documents that were still in extant form on their computer desktops. But such a narrow interpretation of plaintiff's request ignores the requirements of electronic discovery. This position also ignores the history between the parties in this case. Defendants were aware that plaintiff believed the e-mail correspondence existed, which had not been produced since last fall. This is the reason why the Court permitted the search in the first place. To claim now that plaintiff is at fault for not telling defendants how to search their computer system is specious. Defendants were on notice that plaintiff believed the production was inadequate and apparently did nothing further to locate additional electronic discovery until plaintiff forced the issue.

The burden is not on plaintiff to figure out what relevant information might be stored on defendants' computers. Federal Rule of Civil Procedure 26(b)(1) states plainly that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."[4] Rule 26(b)(2) exempts from disclosure the discovery of "electronically stored information from sources that the party identifies is not reasonably accessible because of undue burden or cost."[5] Even then, a court may nonetheless order such discovery, or specify conditions under which it should be produced. The Rule, thus, places the burden on the party responding to discovery to

---

[4] Fed.R.Civ.P. 26(b)(1).
[5] Fed.R.Civ.P. 26(b)(2).

identify whether there may be materials responsive to discovery requests that are stored on its system, but because of burden or cost are not reasonably accessible.

In this case, that did not happen. Instead, defendants apparently pulled only materials that were still available on employees' desktops and made no effort, at least not one that has been explained to this Court, to look any further, even when they became aware that there was a possibility that there may be missing documents. Although Mr. Bransky may not have the necessary expertise to have found the document - which was not on a back-up tape or in other more remote storage but, instead, was on his own hard drive, as well as on defendants' network server - defendants were obligated to search those drives more throughly than they apparently did or explain why such a search would be too burdensome, costly or difficult and, therefore, should be excused.[6]

Thus it is obvious to the Court that the document in question could have been produced with minimal effort. The question left to decide is what sanction, if any, should be assessed for defendants' failure to produce it. The Court already has allowed plaintiff's counsel to interrogate Mr. Bransky further about this e-mail if he chooses to do so. Plaintiff, however, is seeking a more significant sanction. It has asked that the Court shift the entire burden of the search onto defendants.

The Court's authority to sanction a party for discovery violations is provided for both in Rule 37, which is directed at a party's failure to obey a court order,[7] and in a court's inherent authority

---

[6] It is true that the adoption of the Seventh Circuit's Pilot Principles on Electronic Discovery encourage early and substantive communication between the parties about preservation and the parameters of searches for responsive electronic documents. This Court enthusiastically has endorsed and applied those principles in cases before it. However, the question presented here does not require the more explicit guidance on electronic discovery that these principles provide. It is far more basic. A party cannot simply provide documents which are easily obtained and then assert that they have produced everything that is responsive to the request. The plain language of Rule 26 makes it clear that if other relevant and responsive documents exist (or may exist), the party must say so and then say why those documents cannot or should not be produced.

[7] Fed.R.Civ.P. 37.

to manage and ensure the expeditious resolution of cases on its docket.[8] The purpose of sanctions are to eliminate any prejudice to the other party and to deter future misconduct.[9] A sanction must be proportionate to the circumstances surrounding the discovery violation.[10] Although the motion is styled a motion pursuant to Rule 37, plaintiff cites no actual court order which was violated and the Court does not know of one. Rule 37, therefore, is not applicable. Instead, defendants failed to produce a clearly relevant and accessible document because, as the Court already has found, they did not take adequate steps to ensure that they had complied with Rule 26 when they answered plaintiff's discovery request. Further, even after it was clear to defendants that plaintiff believed e-mail documents were missing from the production, they did nothing to supplement their production. Plaintiff's claim that this was a deliberate decision by defendants to avoid discovery of the document is not supported. Although it is true that had the Court allowed the broad privileges asserted by defendants to shield the production, the document may not have surfaced, but we cannot find that this conduct, standing alone, supports a finding that the conduct was deliberate.

Plaintiff's case has not been unduly prejudiced by defendants' conduct only because plaintiff searched defendants' computers at its own expense and found the document. But had plaintiff not offered to do this, this document would never have been produced. Plaintiff (and the Court) expended additional time and effort on this matter and plaintiff incurred significant additional expenses. To allow defendants to walk away scot free from such an obvious discovery violation would be unfair. The document is an important one and there is really no excuse for the failure to

---

[8] *Chambers v. Nasco,* 501 U.S. 32, 50-51 (1991); *Barnhill v. U.S.,* 11 F.3d 1360, 1367, 1368 n. 8 (7th Cir. 1993).
[9] *See Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976)(noting punitive and deterrent purpose); *Marraco v. General Motors Corp.*, 966 F.2d 220, 227 (7th Cir. 1992).
[10] *Barnhill*, 11 F.3d at 1367.

produce it.

The Court finds that the appropriate sanction is to shift half of the cost of the electronic discovery search to defendants. The Court does not believe that shifting the entire cost is appropriate given that plaintiff only found one document (however significant) from that effort. Accordingly, the Court grants the motion in part and denies it in part [dkt. 219]. Plaintiff is to submit a bill of costs by June 1, 2011. All matters before the Court having been resolved, the referral will be closed after the bill of costs has been granted.

**IT IS SO ORDERED**.

**ENTERED: May 24, 2011**  _____
**UNITED STATES MAGISTRATE JUDGE
Susan E. Cox**