**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IWOI, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO.: 07-CV-3453 |
| MONACO COACH CORP., et al., | ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants' Barrington Motor Sales RV, Sean Bransky and Bryan Bransky move for summary judgment [251] on Counts III-VII of Plaintiff's Third Amended Complaint. For the following reasons, Defendants' motion [251] is granted as to Count III in its entirety and as to Counts VI and VII to the extent that they seek recovery on the basis of the federal Magnuson-Moss Warranty Act ("MMWA"). Defendants' motion [251] is denied without prejudice in all other respects; as explained in detail below, given that there are no remaining viable federal claims against any Defendant, the Court adheres to the "usual practice" in this circuit of dismissing without prejudice all remaining state law claims.

**I.    Background**[1]

On April 29, 2006, Plaintiff IWOI, LLC – a Montana limited liability company formed by Robert Woischke[2] – ordered a new 2006 Beaver Monterey motor home[3] ("RV") from Defendant Barrington Motor Sales RV ("BMS") for $222,500.00.[4]

---

[1] The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements: Defendants' statement of facts ("Def. SOF") [253], the Plaintiffs' response to The City's statement of facts ("Pl. Resp.") [277], the Plaintiffs' Statement of Additional Facts ("Pl SOAF") [273], and Defendants' Response to the Plaintiffs' Statement of Additional Facts (Def. Resp.) [289].

[2] Woischke is the sole member of IWOI and is a citizen of Illinois.

The RV arrived at BMS from the factory in Oregon on May 8, 2006. From the time that it arrived, the RV had problems. When it arrived, BMS service personnel, including Bryan Bransky, visually inspected and test-drove the RV. On May 8, Woischke visited BMS to see the RV. At that time, Sean Bransky advised him that there were a couple a problems with it. Specifically, the Caterpillar engine was making a lot of noise, the oil pressure was reading low, and there was a lot of black exhaust smoke. Sean informed Woischke that BMS was taking the RV to a Caterpillar facility to have it evaluated. On May 16, Woischke went to Patten Power Systems Co., a Caterpillar facility, to meet with service technicians about the RV and receive a report on their findings and actions.

A few days later, Woischke went back to BMS to see the RV. Sean Bransky advised him that it was exhibiting "bump steer" issues and had been taken to Champion Frame Align, Inc. for service. Sean told Woischke that "bump steer" is when you hit a bump and the steering wheel jerks. Woischke then went to Champion and spoke with an employee who confirmed that the RV exhibited bump steer. Champion worked on the bump steer for a week, but could not determine its cause and was unable eliminate it.

BMS then contacted Monaco for assistance, and on May 25, 2006, Monaco sent a chassis specialist to Champion to investigate and resolve the bump steer issue. The Monaco specialist observed the bump steer issue and made several attempts at fixing it, including readjusting leveling pressures, leveling the vehicle, and realigning the front wheels. The parties disagree as

---

[3] Beaver Motor Coaches, an unincorporated division of Monaco Coach Corp., built the motor home on chassis constructed by Roadmaster Chassis, another unincorporated division of Monaco. Defendant Monaco Coach Corp., was dissolved in bankruptcy [see 98], and is not a party to this motion.

[4] Defendant BMS is an Illinois corporation with its sole place of business located in Bartlett, Illinois. Defendants Sean Bransky and Bryan Bransky are shareholders of BMS and act as president and vice president, respectively, of BMS.

to what Defendants actually told Woischke about the problems and if they could be fixed or whether any modifications took the RV out of the manufacture's specifications.

At this point, Sean told Woischke that the RV may have to go to Indiana, and that if Woischke was not happy and satisfied he did not have to accept it. The parties dispute whether this meant that Plaintiff could recover the $10,000 deposit that IWOI had put down for the RV. The next day, Woischke informed Sean that he "could not accept the present coach with modifications to 'treat' a symptom * * * and that [he] would walk away from the present coach – it was not acceptable." Sean told Woischke that he would call Monaco and request an identical replacement vehicle. Later that day, the Monaco specialist told Woischke that the bump steer problem was not resolved and he did not know what was causing it. He did not tell him about any other problems with the RV.

Woischke again test drove the RV with Sean Bransky and experience the bump steer and heard bumping and clunking noises. In the next few weeks, between May 26 and June 14, Sean and Woischke discussed replacing the RV's shocks. The parties dispute whether BMS had authorization from Monaco to have Champion replace the shocks with KONI shocks and whether changing the shocks caused additional damage and new problems for the RV. After the shocks were replaced by Champion, Woischke again test drove the RV and heard the same noises. The parties dispute whether Defendants told Woischke that the noises he heard during the test drive were normal and whether Plaintiff continued to feel the bump steer.

On June 14, 2006, after the test drive, Monaco agreed to cover the cost of an extended engine warranty for the RV and Sean Bransky agreed to provide a letter indicating that modifying the RV by installing the KONI shocks would not alter the applicable warranty. The parties disagree over whether Woischke ever received this letter.

3

On June 21, Woischke, on behalf of IWOI, purchased the 2006 Beaver Monterey RV, VIW 1RFC9544261039973 from BMS. IWOI purchased the RV under an Illinois Standard Buyers Order, which was signed by Woischke. The provision states that:

> <u>DISCLAIMER OF IMPLIED WARRANTY</u>: Unless prohibited by law * * * the vehicle is sold "AS IS" and (dealer) hereby expressly disclaims all warranties, either express or implied, including any IMPLIED WARRANTY OF MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE.
> * * *
> PURCHASER AGREES THAT THIS ORDER INCLUDES ALL OF THE TERMS AND CONDITIONS ON BOTH THE FRONT AND BACK SIDE HEREOF AND THAT THIS CONTRACT CANCELS AND SUPERCEDES ANY PRIOR AGREEMENT INCLUDING ORAL AGREEMENTS.

Woischke does not deny that he read the Buyers Order or that BMS expressly disclaimed all warranties.

On June 22, the day after purchasing the RV, Woischke returned to BMS complaining that the RV drove "wishy" and "dog-tracked" on the highway. The parties dispute whether Woischke complained about the bump steer at this time. BMS agreed to transport the RV to Monaco's Indiana repair facility, but first took it to Champion, where the rear end was realigned. The parties also dispute whether the Defendants knew that frame was twisted. On July 18, Woischke again test drove the RV and found that there was still some bumping under the front suspension when going over bumps and that there was still "dog tailing" but not as much as before. The next day, Woischke experienced severe bumping that jerked the steering wheel out of his hands and continued to hear clunking noises.

On July 20, 2006, Woischke gave Sean Bransky a letter outlining his complaints, indicating that he is not happy with the vehicle and gave BMS three options: (1) place the vehicle in your inventory and replace it with a new identically equipped vehicle; (2) refund all monies that he has paid or; (3) return the vehicle to the manufacturer to have the problems

4

completely resolved. Woischke also alleges that he refused to take the RV back at this point. BMS agreed to return the RV to Monaco's Indiana facility and have Woischke go to the facility to discuss the problems with the Monaco personnel.

On August 16, Woischke and the RV arrived at the repair facility. Monaco service personnel met and test drove the RV with Woischke and performed repairs. Repairs continued until September 27, 2006. During that time, Woischke sent a letter, dated September 9, 2006, to Brian Sporner in Monaco's service department complaining that the bumping noise had not been satisfactorily repaired and he was refusing to accept the return of the RV from Monaco. Yet just over a month later, on October 17, 2006, Monaco returned the RV to BMS. According to Woischke, BMS transported the RV back to Illinois only after assuring him that they would check the condition of the RV. After October 17, 2006, Plaintiff did not request that any repairs be preformed on the RV.

Plaintiff filed this action on June 20, 2007. On October 8, 2008, the Court granted in part and denied in part Defendants' motion to dismiss. Specifically, the Court granted Defendant Monaco's motion as to Claims I and IV of Plaintiff's Second Amended Complaint, but denied its motion as to the rest of the claims and denied BMS' motion as to all of Plaintiff's claims. Plaintiff filed a Third Amended Complaint on May 5, 2009, which included seven claims. Claims I and II are directed only against Defendant Monaco, and therefore are not currently at issue. Count III claims revocation of acceptance against BMS under § 2-608 of the Uniform Commercial Code ("UCC"), 810 ILCS 5/2-608, and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* Counts IV and V allege violations of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.* In Counts VI and VII, Plaintiff seeks conversion of money and the recovery of the purchase price from BMS under the UCC and the

5

MMWA in the event it is found to have properly revoked acceptance. On June 7, 2011, Defendants BMS, Sean and Bryan Bransky filed a motion for summary judgment on Claims III-VII. Earlier this year, the Court requested and received supplemental briefing on the status of any claims that Plaintiff may have asserted in the Monaco Coach bankruptcy proceedings. As explained below, whether Plaintiff's claims against Monaco Coach remain viable bears on this Court's continuing jurisdiction over the entire lawsuit.

## II. Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Count III: Revocation of Acceptance

In Claim III of the Third Amended Complaint, Plaintiff claims revocation of acceptance under the MMWA and Section 2-608 of the Illinois Commercial Code (810 ILCS 5/2-608). Defendants argue that Plaintiff's claim for revocation fails because it has (1) no claim under the MMWA, and (2) it cannot revoke acceptance because Defendants expressly disclaimed all warranties.

Under the MMWA, only "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under * * * a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. 2310(d)(1). The viability of Plaintiff's claim for revocation of acceptance under the MMWA turns on whether BMS failed to comply with a written warranty or an implied warranty. Here, the parties do not dispute that Woischke, on behalf of IWOI, signed an agreement that expressly disclaimed all warranties, express and implied. (BMS "hereby expressly disclaims all warranties, either express or implied, including any IMPLIED WARRANTY OF MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE."). BMS did not make a written warranty to Plaintiff, and thus it does not have any obligations under the MMWA. See *Soldinger Associates, Ltd. v. Aston Martin Lagona of North America,*

*Inc.*, 1998 WL 151817, at *3 (N.D. Ill. Mar 27, 1998). Accordingly, Claim III is dismissed in so far as it alleges a violation of the MMWA.[5]

B. **Supplemental Jurisdiction over Remaining State Claims**

Because the Court now dismisses the only claim against Defendants over which it has original jurisdiction, it must now address whether to retain jurisdiction over Plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3). Animated by the principle of comity, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993); see also *Wright v. Associated Ins. Co.*, Inc., 29 F.3d 1244, 1251 (7th Cir. 1994) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction * * *"); see also *Horton v. Schultz*, 2010 WL 1541265, at *4 (N.D. Ill. 2010).

In *Wright*, however, the Seventh Circuit noted that occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to federal decision of the state law claims on the merits." 29 F.3d at 1251-53. The Seventh Circuit further instructed in *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, that a "district court deciding whether to retain jurisdiction pursuant to the factors set forth in § 1367(c) 'should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience,

---

[5] This disposition as to Count III forecloses any possible recovery for Plaintiff under the MMWA, as asserted in Counts VI and VII of the operative third amended complaint. Defendants' motion therefore will be granted to that extent. However, the Court expresses no view at this time on Plaintiff's claims for relief in Count VI and VII under the common law or under state statutes, and nothing in this opinion is intended to prevent Plaintiff from pursuing those theories in state court.

fairness, and comity.'" 551 F.3d 599, 608 (7th Cir. 2008) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). "That the jurisdiction hook is eliminated before trial at best only preliminarily informs the balance; the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources can and should make the difference in a particular case." *Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir. 1994). The task at hand is to evaluate the relevant factors to determine, in the exercise of its "broad discretion" (*Hansen*, 551 F.3d at 608), whether this is the unusual case in which a federal court should render a decision on the merits of a state law claim despite the fact that no remaining federal claim against Defendants exists.

### 1.     Federal Claim against Monaco

In this case, the analysis is particularly thorny. First, there is a remaining federal claim against the other Defendant, Monaco, which is not subject to this motion to dismiss. See Plaintiff's Third Amended Complaint, Claims I-II [124]. Ordinarily, the Court would maintain jurisdiction over the entire case because of the remaining federal claim. See 28 U.S.C. § 1367(a). But at this stage of the case, any claim against Monaco is a legal fiction.

Monaco filed for Chapter 11 bankruptcy on March 5, 2009. See *In re Monaco Coach Corp.*, No. 09-10750-KJC (Bankr. D. Del.) ("Monaco Bankruptcy"). Consequently, on March 9, 2009, all proceedings in this action against Monaco were stayed pursuant to 11 U.S.C. § 362(a). [see 98]. On June 30, 2009 Monaco's bankruptcy was converted to a Chapter 7 Bankruptcy. Plaintiff then was sent a 9D form giving official notice of the bankruptcy and informing Plaintiff of the November 12, 2009 deadline for filing a proof of claim.[6] The docket in the Monaco Bankruptcy Case reveals that 4,387 entities filed claims by that deadline. In response to the

---

[6] Robert Woischke of 202 Brookston Drive, Schaumburg, IL 60193, was number 4645622 on the list of potential creditors that received notice of Monaco's bankruptcy on July 16, 2009.

Court's request for supplemental information, Plaintiff acknowledged that (1) it did not file a claim against Monaco in bankruptcy court and (2) any potential claim that Plaintiff had against Monaco in the Monaco Bankruptcy is now time barred. [See 295.] Because Plaintiff cannot obtain any relief from Monaco as to any of its claims in this case, the Court must assess whether there is any continuing basis for federal jurisdiction on the basis of the stayed claims against Monaco.

Under Article III, Section 2 of the United States Constitution, the judicial power of the federal courts extends only to certain enumerated kinds of cases and controversies. The Supreme Court has interpreted this to mean that there is jurisdiction only where an actual, live controversy exists between the parties. *Prieser v. Newkirk*, 422 U.S. 395, 401 (1974). If the suit would decide "questions that cannot affect the rights of litigants," there is no case or controversy. *Id.* at 401 (internal quotation and citation omitted). Similarly, if the actual controversy disintegrates over the course of the lawsuit, the case is rendered moot. *Id.* In other words, "a controversy ceases to exist, and the claim in question becomes moot, if 'events outrun the controversy' so that the court 'can grant no meaningful relief.'" *In re Klinger*, 301 B.R. 519, 523-24 (N.D. Ill. 2003) (citing *McBryde v. Committee to Review Circuit Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001); see e.g. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992); *In re Vlasek*, 325 F.3d 955, 961 (7th Cir. 2003).

In this case, any relief that Plaintiff might have obtain vis-à-vis Monaco would have to come from the bankruptcy court and any request for such relief is now time-barred by Plaintiff's own admission. This Court cannot grant any meaningful relief to Plaintiff on its claims against Monaco. Consequently, there is no remaining case or controversy in this Court – and probably in any court – as to those claims. In these admitted unusual circumstances, the remaining federal

claims against Monaco must be dismissed on mootness grounds and thus cannot form the hook for continuing federal jurisdiction in this case.[7] The Court therefore turns to the other relevant factors to help determine whether to extend supplemental jurisdiction of Defendants state law claims.

## 2. Balancing the Supplemental Jurisdiction Factors

Balancing those factors, too, presents a challenge for the Court because they point in opposite directions. On the one hand, the parties have been before the court since 2007 and have gone through extensive discovery, four complaints, and a motion to dismiss—all of weigh in favor of retaining the case for reasons of convenience and judicial economy. See *Hansen*, 551 F.3d at 608. On the other hand, as explained in detail below, one of the remaining state law claims would require the Court to opine on a "difficult and unsettled state law" question, which counsels against exercising supplemental jurisdiction over the remaining claims. See *Timm*, 32 F.3d at 277; see also 28 U.S.C. § 1367 (c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—the claim rises a novel or complex issue of State law").

---

[7] The automatic stay that has been place since March 2009 does not prevent the Court from dismissing Plaintiff's claims against Monaco that have become moot in the interim. Upon filing of a bankruptcy petition, the automatic stay arises as a matter of law. 11 U.S.C. § 362(a). "The automatic stay is a powerful tool of the bankruptcy courts that prohibits inter alia 'any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case * * *.'" *In re Halas*, 249 B.R. 182, 191 (N.D. Ill. 2000) (citing § 362(a)(6)). It applies regardless of whether a creditor is scheduled in the bankruptcy. *Id*. The purpose of the stay is "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors * * *." *Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the Fox Masonry and Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998). Because an automatic stay is in place here, the Court cannot take any action give IWOI an advantage over any of Monaco's other creditors. But dismissing Plaintiff's claims against Monaco as moot because no meaningful relief can be granted to Plaintiff as to any of its claims against Monaco does nothing to disturb the automatic stay or undermine the purpose of the stay in Monaco's bankruptcy case. The protections that the stay provides to both the debtor and its creditors remain fully intact. In short, dismissal of Plaintiff's claims against Monaco is appropriate in light of Plaintiff's acknowledgment that any claims it may have had in the bankruptcy case are time barred (and thus moot) and does not contravene the automatic stay.

More specifically, Plaintiff claims that it revoked acceptance of the RV under 810 ILCS 5/2-608. Section 2-608 of the Illinois Commercial Code states that: "The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it * * *." The Seventh Circuit, citing Illinois law, has stated that to be entitled to revoke acceptance, a plaintiff must prove that: "(1) there was a breach of an implied warranty of merchantability; (2) the defect in the product substantially impaired the product's value to him; (3) the plaintiff reasonably thought the defect could be cured; and (4) it has not been cured." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (citing *Collum v. Fred Tuch Buick*, 6 Ill. App. 3d 317, 321 (1st Dist. 1972)).

Defendants argue that because Plaintiff concedes that BMS effectively disclaimed all warranties, express and implied, and sold the RV "AS IS", the contract did not obligate BMS to deliver the RV in a condition free from defects in material, workmanship, or design, nor establish quality or performance standards with which the RV was required to confirm. See *Larry J. Soldinger Assocs. Ltd. v. Aston Martin Lagonda of N. Amer., Inc.*, 1998 WL 151817, at *5 (N.D. Ill. Mar. 27, 1998) (dismissing claim of revocation of acceptance because found that disclaimer was valid and there was no implied warranty); *McKissic v. Country Coach, Inc.*, 2009 WL 500502, at *7-*8 (M.D. Fla. Feb. 27, 2009) (summary judgment granted on revocation claim for seller who delivered the RV as described in the contract and disclaimed warranties because it could not be found to have breached a contractual obligation relating to product quality that did not exist); *Harden v. Ford Motor Co.*, 408 F. Supp. 2d 309, 312-14 (D. Mich. 2005) (applying Michigan law and dismissing revocation claim where seller sold vehicle "as is" and disclaimed all warranties); *Parsley v. Monaco Coach Corp.*, 327 F. Supp. 2d 797, 803 (W. Mich. 2004) (valid warranty disclaimer precludes revocation based on product quality defects); White &

Summers § 8-4 ("if only relevant language in the agreement as to quality has been effectively disclaimed, no nonconformity in the goods sufficient for revocation can exist").

Plaintiff counters that notwithstanding BMS's disclaimers, IWOI may revoke its acceptance if the nonconformity of the goods substantially impairs its value to the buyer. See *Blankenship v. Northtown Ford, Inc*., 95 Ill. App. 3d 303, 305-07 (4th Dist. 1981). In *Blankenship*, the Illinois Appellate Court noted that "[when] the evidence unequivocally demonstrated that the substantially defective nature of the vehicle clearly impaired its value to the Plaintiffs * * * *revocation of acceptance is appropriate even if the dealer has properly disclaimed all implied warranties*." *Blankenship*, 95 Ill. App. 3d at 306 (emphasis added). Plaintiff further claims, relying on this Court's October 8, 2008 order, that the Seventh Circuit has endorsed this opinion in *Priebe*. *Priebe*, 240 F.3d at 588. But looking more closely at *Blankenship* and *Priebe* in light of both a more complete record and more comprehensive briefing from the parties, the Court now takes a more nuanced view of the issue.

When addressing a question of state law, a federal court's task is "to ascertain the substantive content of the state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Thomas v. H & R Block Eastern Entps*., 630 F.3d 659, 663 (7th Cir. 2011) (internal quotations and citations omitted). In this case, while the Illinois Supreme Court has not ruled upon this exact question, it repeatedly has held that Illinois courts must construe UCC provisions in a manner consistent with the express language used and the underlying goal of uniformity. See *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 905 N.E. 2d 839, 842 (Ill. 2009) (noting that the court looks "to the plain language of the statute as the most reliable indication of the legislature's objectives and when the language of the statute is clear, it must be applied as written without resort to aids or

tools of interpretation"); *Razor v. Hyundai Motor America*, 854 N.E. 2d 607, 618 (Ill. 2006) (adopting an independent approach of constructing a UCC provision because it is "more in accordance with the plain language of the UCC"). In fact, the Seventh Circuit has noted that Illinois tends to adopt the majority rules in UCC cases. *Northrop Corp. v. Litronic Inds.*, 29 F. 3d 1173, 1178 (7th Cir. 1994). The Court also must give substantial weight to the pertinent decisions of the Illinois Appellate Court. See *Thomas*, 630 F. 3d at 663 ("If the state's highest court has yet to rule on an issue, 'decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.'" (citing *Research Sys. Corp. v. IPSOS Publicite,* 276 F.3d 914, 925 (7th Cir.2002)).

The upshot of this analysis is that – again, with the benefit of a complete record and extended briefing – consideration of Plaintiff's revocation claim appears to be a great deal more complicated and nuanced than it may have appeared years ago when the issue first surfaced. Ultimately, in order to determine whether Plaintiff revoked acceptance of the RV under 810 ILCS 5/2-608 the Court would have to opine on a "difficult and unsettled state law" question. *Timm*, 32 F.3d at 277. Thus, although the supplemental jurisdiction factors cut in both directions, the Court concludes that this is not an appropriate case to make an exception to the "usual practice" of relinquishing jurisdiction over state law claims after disposing of all federal claims in a case. *Groce*, 193 F.3d at 501. In the interest of comity, an Illinois state court, not a federal district court, is the proper forum for determining whether Plaintiff revoked acceptance of the RV under 810 ILCS 5/2-608. In addition, the countervailing concerns about judicial efficiency noted above do not weigh as heavily in this particular instance because (1) the compilation of a complete record at the end of a long road in discovery and (2) the careful distillation of the remaining legal issues leave the matters still in dispute between the parties

highly portable to state court. For all of these reasons, the Court declines to retain supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(1).

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Count III in its entirety and as to Counts VI and VII to the extent that they seek recovery on the basis of the federal Magnuson-Moss Warranty Act ("MMWA"). Defendants' motion [251] is denied without prejudice in all other respects. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Defendants Barrington Motor Sales RV, Sean Bransky, and Bryan Bransky. Those claims are dismissed without prejudice to refiling in state court.[8] In addition, Plaintiff's claims against Monaco Coach are dismissed as moot in light of Plaintiff's acknowledgment that it did not file a claim in Monaco's bankruptcy case and now would be time-barred from doing so. This case is closed.

Dated: August 28, 2012

Robert M. Dow, Jr.
United States District Judge

---

[8] Pursuant to 735 ILCS 5/13-217 Plaintiff has the greater of one year or the remainder of the applicable limitations period to refile these claims in an Illinois court.